All right. It looks like the lawyers are both present. So we'll get started here. You are in front of the first division of the first district appellate court of Illinois in the case of the people of the state of Illinois versus Dennis Cummings, number 1-22-0520. My name is Terry Lavin, and I will be presiding today along with my colleagues, Michael Hyman and Mary Ellen Coughlin. And we are here to hear your oral arguments. We are very familiar with the briefs and the records. So we'll ask you to get right to your arguments and we're looking for 15 minutes a piece, save a little time for rebuttal, appellant, and we'll hear from Mr. Johnson now. Your honor, may it please the court, counsel. My name is Doug Johnson and I represent the defendant, Dennis Cummings, who is currently serving 24 years in the Department of Corrections pursuant to his sexual assault and kidnapping convictions. I'd like to get right to it and go to our argument that inadmissible other crimes, specifically the sexual assault of CD, was admitted against Mr. Cummings and it should not have been. Prior to the trial, the state filed a motion basically alleging the standard reasons that the other crime should get in motive, identity, common design, modus operandi, all those things. And also that the other crime should get in under the statute for propensity. And I certainly, there are, those are bases in many cases for admitting other crimes, but it just did not apply in this case here. What evidence, what evidence, what evidence was admitted and who put it in? It came in through O'Dunsey Crawl on direct examination where she said that Dennis Cummings was a named offender in another case, and I know the state has said that that didn't, I know the state says the defendant opened the door, but it just, the record rebuts that. I mean, how else are you going to respond to a DNA match? How else can you put it into evidence? I think in the, how it was done in the Jackson case, simply say that defendant's DNA cannot be excluded from Ariel Johnson, did not have to mention CD at all, and it was in a database. That would have been fine. But to say he was a named offender, especially in this case where he was that other case, it cannot be emphasized enough with CD, he was not arrested. He was not even approached. He was not even questioned. So this was not another offense. The case, the prosecution, someone saw fit not to go forward with that case. So what happened was CD did get a sexual assault kit done. The defendant, and then there was apparently an association, but to call him a named offender in a case where he wasn't convicted, and in Jackson, the defendant was convicted, but here the defendant was not even approached. And I think that's the reason that should not have been admitted. What is your objection? Is your objection to the word offender? What if the word suspect had been used? I think named, my objection is named offender. I think suspect would have been inappropriate too. None of it had to be done. The same thing that was done in Jackson could have been done here. But far more was done here. And they, on and on, they talked about him being a named offender. The state prosecuted and convicted him of an offense against CD when there wasn't one. Certainly not one chosen. It must be remembered, CD didn't testify. A police officer didn't testify here. Nobody, nobody, nobody said that he was tried and convicted or arrested and charged with that other case. All they said was that there was evidence of a match in CODIS. On, for instance, a couple of examples in our, on 757 of the record, the prosecutor argued now the DNA database, it's an investigatory tool that is used. Detective Odunzi-Kral later learned after Ted completed his work on this case, that the male profile from that oral swab was associated with another case. So she looked into that case and she saw that in that case, there was someone who was named as the offender in that case. And that person was this defendant. That sounds to me like a reference to he, defendant was convicted of the sexual assault of CD. And CD's name is never mentioned. You're not suggesting that it was. It was not, I do not, I cannot tell you if CD's was referenced or not, but there was a victim in that other case. Yes, I don't know. Well, there's nothing in the record that says that the prosecutor or anyone else is saying CD in this case. No, just sexual assault. And the testimony that you referred to is when the police officer was talking about investigatory steps that were taken in this particular case, right? Investigatory tool is fine. Our problem is where she says, in that case, there was someone who was named as the offender, i.e. if it's a crime was committed, someone was named as the offender and that person was this defendant. And also on 766, the prosecutor said he's a calculating man as to how he presents himself. And you can imagine his frustration when he learned that when he raped Ariel Johnson that night, he didn't know his DNA was already in the system. He didn't know that. So he thought he had his bases covered when he raped Ariel. He thought a mask would conceal his identity. And that's all we would have to do. Little did he know that his DNA was already in the DNA database from a second criminal sexual assault kit where he was identified as the offender. So it is very clear this jury was told this defendant raped another victim and he was convicted of it. I think you're reading a little bit into that and you're a very fine lawyer. I'm not disputing your talent, but I think that you are drawing some inferences from what the actual record reflects. I, I can't, I, I, I guess respectfully submitted. I don't know when you call those are exact quotes. From the record, and they are saying he was a named offender. And isn't any suspect a named offender. I think a suspect can be exonerated. I think named offender. I respectfully, I believe they're different terms suspect means to a jury. He may have done it. He may have not at 1 time. They thought he might have named offender. I think is would come off as no, he did it. There's no 1 else he did this. Well, the idea of the word named.  So, how do you interpret that? I'm sorry, I don't know the fact that. He was named in a case, right? Yes. How does a jury interpret? Would you expect a reasonable juror to interpret those words? I would believe a reasonable jury would think this means he committed another sexual assault. A named offender, he did it. And the, the other reasons I believe there are problems here is the 2nd reason to bar the. The, the case, there's no case number for that. We don't know if that if there's even was a case file doing. On CD, we don't think it was a case file. We have a police report. Yeah, we have a police report, but we don't have I don't I think the record shows the prosecution did not proceed with anything and there was no case number. For some reason, I don't think so. I think the inference from this record is that. That there was something that was not prosecuted prosecutable about that case. Well, so are you saying that the state is not allowed to put in evidence of. Something like this, unless he's actually charged. No, I, I think the case law, although it is not completely different. I think it is, he must, it must be more than a mere suspicion and less than proof beyond a reasonable doubt. And in this record, doesn't section 1, 1, 5, 7.3, 725 5 slash 1, 1, 5, 7.3. Doesn't that allow the state to submit evidence of uncharged crimes. Uncharged crimes in order to show a defendant's propensity to commit a sex offense. That's the law. Yes, and I believe there is a 3 prong test under that statute. And the 2nd prong involves factual similarity. And there is no similarity whatsoever. Between very little, I guess I would say they're both certain types of sexual assaults, but. And all sexual assaults, of course, are very serious. So I. But let's look at the differences and whether or not that statute can be applied. And the difference is the perpetrator in both cases. Ejaculated into the victim's mouth. The perpetrator lived in the same area. And the DNA was a match. What more do you need for probable cause? Okay, the perpetrator, first of all. There is no evidence that it wasn't a consensual encounter with regard to CD. The, uh. The attack happened on April 2nd of not attack. But what happened is CD and the defendant met each other. On April 20th of 2018 through social media exchanges, and they got together. They smoked marijuana. He asked her to have vaginal sex. She declined and this is the state's version. She declined so then. Sex because she was scared. And then she left. He did not. The defendant did not wear a mask. He made no attempt to cover up his who he was. And there was no weapon used. I submit there is no. The cops may have asked for felony review and there was no response. I am not saying that he has to be charged with this, but it was dropped there. And there is nothing to suggest more than this was a consensual encounter, especially since they did not proceed. Now, with some evidence in the record that she just was, you know, as is common with victims of sexual assault that she didn't want to proceed. There's evidence that for whatever reason there, someone did not proceed. I mean, they knew where she was. They knew where they don't really know, do we? We don't really know. But we know they knew where the defendant was and who he was. And they never even approached him or talked to him. And so we know that we know that a complaint was made to the police. We know that a rape kit was done. And we know that that rape kit matched the rape kit that was done in this case. That is the record. Yes. And that should be barred? Absolutely. Absolutely. He was not charged because we don't know that was. We don't know that anything happened inappropriate with C.D. We the some more. They did not go forward. I would think that the police officers, the prosecutors, if they thought a serious sexual crime had occurred, they would talk to the defendant. They would arrest him. They would charge him. They didn't do anything. So to then say that this what we see for the record could very well be a consensual encounter to treat it as if it is a serious sexual, something that unequivocally this defendant did and injected into this case, I think is a seriously a fundamental violation of his rights. Our system is built to, as I'm sure your honor still is, is built to prosecute this defendant for the case he is on trial for. And these were very, very different things. I'm sure the jury did not think of this meeting together when they heard that he was a named offender in another sexual assault case. They were thinking something like that what they heard with A.J., which was where the offender wore a mask, threatened her life, met her outside, not in the home, used a weapon and threatened to kill her. That's a much different thing. And therefore, I think where we started with this, the statute should not apply and it should not have come in. He should have been tried just like the Jackson case. And they could have said, we got his DNA from a database. I mean, if that had been done, then we wouldn't have a leg to stand on probably. But here, and I can, exactly how it came out, because I think the state, we differ with the state, but it's on 696 with Detective Odunzi Crawl. It says, at the time you began working on this case, was there a named offender? Yes, there was. And who was the named offender? It was Dennis Cummings. And how did he become a named offender in this case? There was a DNA association with another case with him being the named offender in that case. And so therefore, now all of a sudden, Mr. Cummings is fighting two sexual assaults when he should only be fighting one. And the jury certainly would have thought, well, he must have done one of them. And I think it's- Just to understand your argument. So the other crimes evidence, you think is a strong argument because that's the one you raise right now. But you argue in your briefs also that the DNA in the CODIS was a mistake. And of course, the statute says that mistakes aren't a defense. So as far as that's concerned, that's not your argument. I mean, you made that argument, but I'm saying that's a different argument than what you're saying now. Yes, Your Honor. The fact that it was in the CODIS, for this argument, you're saying that that is fine. That there was another way to put in this evidence. Yes, in the Jackson case, the judge said, I'm going to allow you just to say his DNA came from a database. And I'm going to allow that. That's the quote, least offensive way to do it. That's what the judge said. But there was no objection here. No. Well, at the pretrial motion, and I know Your Honors have read the briefs and saw the circus created. I know this must be the hardest, maybe the hardest thing a judge has to deal with. But the defendant did, he did object when the state wanted to put in the other crimes. He didn't do it with this argument, but he did object. Was there any request for a limiting instruction to limit the evidence to the officer's investigative steps? Was that requested? Not that specifically. The jury instruction as to other crimes was given, but I should note that the, in that instruction, the written instruction refers to other offenses. So even that was not put in properly, but there was no, to answer your question directly, the defendant did not request a limiting instruction. And if you have a confirmatory match, which was present in this case, how can you argue that the evidence is closely balanced here? I think under the plein air prong, the two, both would apply. One, because Ariel Johnson could not identify the attacker. Could you please not use her name, use her initials? I'm sorry, I'm sorry. The second victim, AJ, could not identify her attacker, could not pick the attacker out of a photo array. And the DNA, the, there was no profile taken from the face swab. There was no, the swab from the neck showed three, the defendant was excluded, but other DNA was there. So it was the oral swab that was a match or more technically could not, defendant could not be excluded from. And so defendant here was convicted of two bad counts of vaginal penetration, but there was no DNA for that. And so for the only evidence here was that DNA and the jury might've thought, might've had questions. Indeed, they did have a question because they asked to see Ariel Johnson's testimony and that was submitted to them during deliberations. As to the second prong, I go back to the fact that I think it's a fundamental cornerstone of our system that you are tried for the case for which you are on trial. And here, the, he was, if he was charged, arrested, convicted by being called a named offender and having it repeatedly argued that he committed two sexual assaults. And I think he should get a fair trial where he could properly be represented. There could be, this could properly be litigated and a proper trial could proceed. Okay, let's hear from the state. Good afternoon. May it please the court, counsel. This court should affirm defendant's convictions for aggravated criminal sexual assault and aggravated kidnapping for the issues he raises on appeal are procedurally barred, rebutted by the record and are otherwise lacking in substantive legal merit. Unless the court has any specific questions about the forfeiture arguments raised in the people's brief, I will focus my arguments regarding the lack of substantive merit underlying his claims. Okay. So with respect to the other crimes evidence, he mounts several different challenges and none of them have any merit. First, the mere fact that the defendant was never charged with the sexual assault of CD is not in any way dispositive. The relevant statute does not limit the introduction of prior sex offenses to prior criminal convictions. There's no requirement that there had been an arrest. There was no requirement that there had to be a case number assigned to it to be introduced at a trial. So prior uncharged sex offenses, the case law is very clear, may be admissible pursuant to that statute. Second, it has to be noted that although the people did file a pre-trial motion seeking to introduce evidence regarding the defendant's prior sexual assault of CD, the people did not introduce that evidence in their case in chief, notwithstanding the fact that they had secured a favorable ruling. During the people's questioning of Detective O'Donnell's parole, the people were inquiring into the manner in which this investigation proceeded. And Detective O'Donnell testified that she, after AJ reported her sexual assault, that she had learned of an association between the DNA profile recovered from AJ's oral swab and the DNA recovered in an unspecified other case in which defendant was the named offender. She never discussed the facts underlying CD's case. But he was not a named offender in another case, was he? He was the named offender in CD's case, yes. There was no case pending. There was no number. There's no case to a juror. A case means a complaint, something that has been proceeding in court, right? You wouldn't expect a juror to understand that word in any other way, would you? The jurors would not necessarily understand the circumstances pursuant to which the defendant became known to the police. But that sort of information is essential to explain how the detective investigating AJ's sexual assault, how a defendant came on the radar. I know, and how you do that. The issue that counsel's raising, as I understand it, is that it can be done. And there are case law that shows it can be done appropriately. And in this case, it was not done appropriately because it gave an impression to the jury in the way the questioning. I mean, you would agree that there are different ways to put in this evidence, correct? Sure. And I guess counsel was not saying that it could not be put in. His argument was how you do it can either make it create the impression of other crimes evidence or not. And when you look at the arguments, I'm not gonna rephrase them or anything, but he read at the outset some of the arguments that were raised by the state as opposed to the questioning. And a lot of reliance on this other case and what happened there. I mean, that seemed to be the intent was to show that there is another case where he did something similar. You disagree, but why? No, I don't disagree. I think pursuant to the court's ruling, the state could have gone, if they wanted to, in their case in chief, they could have asked Detective Odonci-Curl about this other sexual assault of C.D. My point is simply that the state did not do that. That information regarding the fact that defendant was a named offender in another sexual assault case was actually brought out by the defendant himself during his cross-examination. But it was brought out first. You have to admit it was brought out first by the state when the state, the prosecutor asked, and how did he become a named offender in this case? There was a DNA association with another case with him being named offender in that case. I mean, that came first. Yes, so there was- He was trying to counter whatever damage that had been done when the state opened the door. Well, he is complaining on appeal about not just this named offender, but that he was a sexual offender and that that had been brought out. The people's point is, we could have introduced the fact that he was the named offender in a sexual assault case in our case in chief if we had wanted to. We had secured that ruling. It was permissible pursuant to Section 115-7.3 of the Code of Criminal Procedure. Legally, that's permissible. We simply brought out the fact that how he became a suspect in A.J.'s sexual assault based on the DNA hits, that was brought out during our examination of Detective O'Dunsey Krull with respect to the fact that it was another sexual assault case. That was brought out by the defendant on his own cross-examination of the officer. And again, Jackson, they're relying on Jackson. Jackson doesn't necessarily preclude the fact that you're talking about a named offender. It allows for discussion of the fact that if there's DNA that brings the police investigating a crime to suspect somebody, that it's a valid basis to introduce that trial to explain to the jury. So, although the people did... We did flesh out the fact about how his DNA was initially entered into CODIS. So, we fleshed out the fact that a sexual assault hit had been performed on CD. But that, again, all happened during our recross-examination after the reference to the prior sexual assault, specifically, was brought out by the defendant himself. To the extent that they're... Defendants arguing plain error because this was not preserved. People would argue that this was not a closely balanced case. Although the victim was not able to identify the defendant because he was wearing a mask, there was an initial DNA association. There was a confirmatory DNA match. In light of that evidence, the people would submit that the evidence in this case was not closely balanced. Well, isn't it closely balanced? Because if you take away that the other crimes evidence statements, what do you have? You have the... Really created a doubt in the jury's mind because of the way it was presented. I mean, you take that away, and what is there? She couldn't identify the wrong defendant, right? She couldn't identify him. There was no witnesses. So, I mean, I respectfully disagree that if we take away the reference to other crimes, that there was not much left to this day's case. So we have AJ's report of the sexual assault. The police go to the scene where she had described where it had occurred. They see what looks like recent footsteps in the snow, corroborating her account that she was sexually assaulted there. We have... There is no question she was sexually assaulted. The question is whether he did. Right, so then we have the rape... Is there any evidence those were his footsteps? He has his DNA, right? I know he has DNA, but beyond the DNA, I mean, that was the crux of the case. It's like leaving your driver's license and fees to your house. I mean, that's plenty of evidence of a sex crime. Thank you, Justice Levin. I would agree with that assessment. So, yeah, I mean, even if there wasn't this reference to the specific other crime being a prior sexual assault, you know, the DNA evidence in this case was, you know, very strong. Again, with respect to the other circumstances, defendant lived within blocks of the scene of the crime. There's a whole host of other circumstances when considered in totality. And again, highlighting DNA match that this case is not closely balanced. And, you know, second prong playing error, that's limited to, you know, it's been equated to structural error. It's not, hasn't applied to, you know, a case where other crimes have been deemed as omission of other crimes and get structural error. So the people disagree that second prong playing error would apply. Unless the court has any questions about any of the other issues raised on appeal, the people respectfully request that the court affirm the defendant's convictions in this case. Okay, let's hear a rebuttal, please. Thank you, Your Honor. Briefly, as to that last point, I apologize. I don't believe it's in our brief, but I disagree that structural error has not been found pursuant to the inappropriate omission of other crimes. I believe the courts have found that in Illinois. Secondly, it is not my position that another crime, in order for another crime to be introduced, the defendant has to be convicted. What matters here is that there was no case. He was not shown to be the perpetrator of a crime against C.D. There is nothing more. If anything, there's just a mere suspicion, but the inferences from this record, and we have only this record, are that this could very well have been a consensual encounter. It was nothing like the attack on A.J. Agreed, there is no dispute that A.J. was sexually assaulted. The state argues, we didn't put in the details, although we could have. I disagree for the reasons I stated. I don't believe it was admissible under the common law or for common design, scheme, or plan, lack of none of those things. I don't believe C.D., the attacks were so different under the statute. The factual similarity was not there to allow it under the statute. Or the common law. How can you argue this is not, how can you argue it's a close case when the DNA does not exclude him to an extremely high degree that he included, extremely high degree? I go back to, all there was was the DNA. Well, it's pretty convincing evidence, isn't it? But the DNA is, yes. However, we must recall that the face did not match him, and he was excluded from the swabs. Yeah, but the DNA, putting that aside, we know that. He had a mask on, so it's not so surprising. But the DNA, it's not just a group of people. It is in a lot of zeros there in the group that can't be excluded. So it was a pretty, not pretty, it was a strong match. That's why they went out. This is not, there was no doubt that there was a, he was not excluded, put it that way. He could not be excluded, correct, yes. So it was, but the, we're talking about the first prong of plain error. I think that the jury had questions. Again, they asked to see her testimony while they were deliberating. And who knows what, they could have believed that there was something wrong with the DNA. I don't know, but I'm not gonna sit and say the DNA wasn't strong evidence. I just think that it was a close enough case due to the massive error that was made. And again, also under the second prong, I believe that this was not, this was a completely unfair, structurally damaged trial because the law from Jackson is very clear. All the state had to do was say, you know what, we're gonna say we got his DNA from a database or we got his, or his DNA was taken from AJ, from the swab from AJ. And that would have solved the problem. It wasn't a complicated problem. So the last thing I'd say is there is an argument in the briefs and today that they, the state did not introduce this. Yes, it came in through a Dunsey crawl saying defendant was a named offender in the assault on CD. And therefore the defendant had to fight that. I mean, that opens the door. Now I got to fight the second crime. So there was no opening of the door by the defendant. And then of course he didn't do it in the most artful fashion, although I'm not, what happened then on redirect is all the details came in or the details that made it sound even worse than it was, although it was terrible. So I think that it was an unfortunate way this case went down through some advice as the court saw was in the record about something was going on by somebody else signing things for the defendant. This was flawed and we know how we could do it right if we went back. And so for that reason, we're asking for a remand. Okay, we will take the matter under advisement. We thank you for your professionalism in brief writing an argument and we will issue our opinion forthwith. We are adjourned. Thank you, justices.